IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | File No. _____ |
| LAURA HARVEY, CLAYTON FIELDS, | ) | |
| WILLIAM HENDERSON, JAY HILL, | ) | |
| ALEXANDRIA MYLES, LUCY LESTER, | ) | |
| BLC INVESTMENTS, LLC, | ) | |
| GARY WEYER, 55 PHARR ROAD | ) | |
| CONDOMINIUM ASSOCIATION, INC., | ) | |
| MARY REED, DUNCAN HUNT, | ) | |
| MARTHA OLSON, MICHAEL RYAN, | ) | |
| and KELLI SOGAR, | ) | |
| | ) | |
|     Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW AUTO-OWNERS INSURANCE COMPANY (hereinafter

"Auto-Owners"), and files this Complaint for Declaratory Judgment, showing this

Honorable Court as follows:

## THE PARTIES

1.

Auto-Owners is an entity incorporated under the laws of the State of

Michigan, and maintains its principal place of business in Michigan.

2.

Laura Harvey (f/k/a Laura Smith) is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia her home.

3.

Clayton Fields is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia his home.

4.

William Henderson is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia his home.

5.

Jay Hill is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia his home.

6.

Alexandria Myles is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia her home.

7.

Lucy Lester is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia her home.

8.

BLC Investments, LLC is a limited liability corporation incorporated under the laws of the State of Georgia, and maintains its principal place of business within the State of Georgia at 945 River Overlook Ct., Atlanta, Georgia 30328. Each member of BLC Investments, LLC is a natural person, a citizen of the United States, is physically present in Georgia, and intends to make Georgia their home. Each member of BLC Investments, LLC is an individual resident and domiciliary of the State of Georgia. Service may be perfected upon BLC Investments, LLC's registered agent, Hunt Dunlap, at 2964 Peachtree Road, Suite 300, Atlanta, Georgia 30305.

9.

Gary Weyer is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia his home.

10.

55 Pharr Road Condominium Association, Inc. is an entity incorporated under the laws of the State of Georgia, and maintains its principal place of business in the State of Georgia. Service may be perfected upon 55 Pharr Road Condominium

Association, LLC's registered agent, Community Management Associates, Inc., at 1465 Northside Drive, Suite 128, Atlanta, Georgia 30318.

11.

Mary Reed is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia her home.

12.

Duncan Hunt is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia his home.

13.

Martha Olsen is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia her home.

14.

Michael Ryan is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia his home.

15.

Kelli Sogar is a resident and domiciliary of the State of Georgia, and intends to make the State of Georgia her home.

## JURISDICTION AND VENUE

### 16.

This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

### 17.

This Court may exercise personal jurisdiction over all of the parties joined in this lawsuit.

### 18.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## NATURE OF ACTION

### 19.

This is an action for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Auto-Owners and Defendants.

20.

A controversy of a judicial nature presently exists among the parties, which demands a declaration by this Court in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

21.

Each named defendant herein has been joined in compliance with case law requiring the insurer seeking a declaratory judgment to bring into the action all individuals or entities that have a financial or other interest in the outcome of the coverage issues to be decided through the declaratory judgment.

## **UNDERLYING CLAIMS**

22.

Laura Harvey, Clayton Fields, William Henderson, Jay Hill, Alexandria Myles, Lucy Lester, BLC Investments, LLC, and Gary Weyer (hereinafter, the "Owner Defendants") are current owners of individual condominium units located at 55 Pharr Road Condominiums, a condominium complex located in Fulton County, Georgia.

23.

55 Pharr Road Condominium Association, Inc. ("Defendant Association") is the condominium association for 55 Pharr Road Condominiums, and Mary Reed, Duncan Hunt, Martha Olsen, Michael Ryan, and Kelli Sogar ("Defendant Board Members") are purportedly several members of the Defendant Association's Board of Directors during the time period between 2010 and 2013 (hereinafter, Defendant Association and Defendant Board Members shall be collectively referred to as the "Association Defendants").

24.

On or about April 26, 2011, the Association Defendants hired Maxim Management Group, LLC, a management company owned by Trent White, to manage the operations and finances of the Defendant Association.

25.

Between April 26, 2011 and June 2013, the Association Defendants' oversight of Maxim Management Group, LLC's and Trent White's management of 55 Pharr Road Condominium was purportedly grossly inadequate to ensure proper management of the Defendant Association and its finances and funds.

26.

Between April 26, 2011 and June 2013, Maxim Management Group, LLC and Trent White purportedly failed to pay bills due for insurance, landscaping, pest control, and general maintenance of 55 Pharr Road Condominiums' property.

27.

Between April 26, 2011 and June 2013, Maxim Management Group, LLC and Trent White purportedly stole $48,666.85 in online rent payments from the Defendant Association.

28.

Between April 26, 2011 and December 2011, Maxim Management Group, LLC and Trent White purportedly stole $145,497.30 from the Defendant Association, as well as money directly from the Owner Defendants.

29.

Between January 2012 and December 2012, Maxim Management Group, LLC and Trent White purportedly stole $288,345.00 from the Defendant Association, as well as money directly from the Owner Defendants.

30.

Between January 2013 and June 2013, Maxim Management Group, LLC and Trent White purportedly stole $146,101.70 from the Defendant Association, as well as money directly from the Owner Defendants.

31.

Maxim Management Group, LLC and Trent White purportedly stole a total monetary amount of $628,610.85 from the Defendant Association and its unit owners.

32.

The Defendant Board Members purportedly failed to respond to Maxim Management Group, LLC's and Trent White's theft of funds and failure to pay essential expenses until June 2013, when Maxim Management Group, LLC's and Trent White's services were terminated.

33.

The purported loss of $628,610.85 was allegedly a direct result of the Association Defendants' repeated and willful refusals to adequately oversee Maxim Management Group, LLC's and Trent White's management of the Defendant Association's funds, portions of which were collected from the Owner Defendants.

34.

On or about September 27, 2013, the Association Defendants sent a notice to all individual owners of units located in 55 Pharr Road Condominiums, including the Owner Defendants.

35.

The notice purportedly states that each unit owner must pay a "Supplemental Assessment" of $3,000.00 or $4,500.00 per unit owned, depending upon the number of bedrooms in each such unit.

36.

The Supplemental Assessment was purportedly issued because of the alleged financial thefts by Maxim Management Group, LLC and Trent White.

37.

On or around January 6, 2014, the Owner Defendants filed a complaint against Defendant 55 Pharr Road Condominium Association, Inc., the same being designated as Civil Action File No. 14-A-00086-2 in the Superior Court of Gwinnett County, State of Georgia ("Underlying Lawsuit"). A true and accurate copy of the original complaint filed by the Owner Defendants in the Underlying Lawsuit is attached hereto as **Exhibit A**.

38.

In their original complaint, the Owner Defendants sought a declaratory judgment declaring that the Supplemental Assessment is invalid and unenforceable; an injunction forbidding the enforcement of the Supplemental Assessment; actual damages in an amount to be proven at trial based upon theories of negligence, breach of contract, and breach of fiduciary duty related to the Defendant Association's mismanagement of itself, and its funds and finances; punitive damages; attorney's fees and expenses of litigation; and, any other equitable relief that the court may deem appropriate. See Ex. A.

39.

On or about June 25, 2014, the Owner Defendants amended their complaint in the Underlying Lawsuit to add board members Mary Reed, Duncan Hunt, Martha Olson, Michael Ryan, and Kelli Sogar as defendants. The amended complaint asserts the same claims as the original complaint, and seeks the same relief against the additional defendants. A true and accurate copy of the amended complaint filed by the Owner Defendants in the Underlying Lawsuit is attached hereto as **Exhibit B**.

40.

In the Underlying Lawsuit, the Owner Defendants seek an amount in excess of $75,000, exclusive of interest and costs.

41.

Auto-Owners received notice of the Underlying Lawsuit for the first time on April 7, 2014.

## THE INSURANCE CONTRACT

42.

Auto-Owners issued an insurance policy to Defendant Association, policy number 124618-48100298, with an effective policy period of March 8, 2012 through March 8, 2013 (the "Policy"). The Policy was subsequently renewed for an effective policy period of March 8, 2013 through March 8, 2014. The Policy was later cancelled, effective June 8, 2013.

43.

The Association Defendants seek a defense and indemnity under the Policy for the claims asserted by the Owner Defendants in the Underlying Lawsuit.

44.

After receiving notice of the Underlying Lawsuit, Auto-Owners issued a reservation of rights letter to the Association Defendants in which Auto-Owners provided notice of its reservation of rights to contest coverage under the Policy for the claims asserted in the Underlying Lawsuit. A true and accurate copy of the reservation of rights letter is attached hereto as **Exhibit C**.

45.

Auto-Owners retained counsel to defend the Association Defendants against the original and amended complaints in the Underlying Lawsuit, subject to the reservation of rights letter.

46.

The Policy issued by Auto-Owners affords no coverage for the claims, allegations, and damages upon which the Underlying Lawsuit is purportedly based. Therefore, Auto-Owners has no duty to defend or indemnify the Association Defendants in the Underlying Lawsuit.

47.

The Policy issued by Auto-Owners provides, in pertinent part, the following:

**SECTION I – COVERAGES**

**COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

     **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result.   .   .   .

.   .   .

     **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period;   .   .   .

Commercial General Liability Coverage Form, form no. 55300 (7-05) ("CGL Form"), at p. 1 of 21.

- 14 -

48.

The Policy similarly provides as follows:

**COVERAGE B.   PERSONAL INJURY AND ADVERTISING INJURY LIABILITY**

**1.      Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or offense and settle any claim or "suit" that may result.   .   .   .

.   .   .

    **b.**    This insurance applies to "personal injury" and "advertising injury" only if:

        **(1)**    The "personal injury" or "advertising injury" is caused by an offense arising out of your business; and

        **(2)**    The offense causing the "personal injury" or "advertising injury" was committed in the "coverage territory" during the policy period.

CGL Form, at p. 7 of 21.

49.

The Policy also contains the following exclusions:

**2.**    **Exclusions**

This insurance does not apply to:

**a.**    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.   .   .   .

.   .   .

**2.**    **Exclusions**

This insurance does not apply to "personal injury" or "advertising injury":

**a.**    **Knowing Violation Of Rights Of Another Or Expected Or Intended Injury**

**(1)**    Caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury"; or

**(2)**    Expected or intended by any insured. This exclusion **a.(2)**, does not apply to "personal injury".

.   .   .   .

CGL Form, at pp. 2, 8 of 21.

50.

The Policy also contains the following:

**SECTION II – WHO IS AN INSURED**

- 16 -

1.      If you are designated in the Declarations as:

.   .   .

d.      An organization other than a partnership, joint venture or
limited liability company, you are an insured. Your
"executive officers" and directors are insureds, but only
with respect to their duties as your officers or directors.

.   .   .

2.      Each of the following is also an insured:

a.      Your "employees", other than  .   .   .   your "executive
officers"  .   .   . , but only for acts within the scope of
their employment by you or while performing duties
related to the conduct of your business  .   .   .   .

.   .   .

b.      Any person (other than your "employee" or "volunteer
worker"), or organization while acting as your real estate
manager.
.   .   .   .

CGL Form, at pp. 11-12 of 21.

51.

The Policy also contains the following definitions:

**SECTION V – DEFINITIONS**

1.      "Advertisement" means a notice that is broadcast or published to
the general public or specific market segments about your

- 17 -

goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.**    Notices that are published include material placed on the internet or on similar electronic means of communication; and

    **b.**    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement.

**2.**    "Advertising injury" means injury arising out of one or more of the following offenses:

    **a.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in your "advertisement";

    **b.**    Oral or written publication, in any manner, of material that violates a person's right of privacy in your "advertisement";

    **c.**    The use of another's advertising idea in your "advertisement"; or

    **d.**    Infringing upon another's copyright, "trade dress" or slogan in your "advertisement".

.   .   .

**4.**    "Bodily injury" means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.

- 18 -

.   .   .

**7.**     "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

.   .   .

**14.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.**     "Personal injury" means, other than "bodily injury", arising out of one or more of the following offenses:

   **a.**     False arrest, detention or imprisonment;

   **b.**     Malicious prosecution;

   **c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   **d.**     Oral or written publication of material that slanders or libels a person or organization or disparages a person or organization or disparages a person's or organization's goods, products or services;

   **e.**     Oral or written publication of material that violates a person's right of privacy; or

   **f.**     Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

.   .   .

**18.**   "Property damage" means:

    **a.**   Physical injury to tangible property, including all resulting loss of use of that property.   .   .   .   ; or

    **b.**   Loss of use of tangible property that is not physically injured.   .   .   .   .

.   .   .   .

CGL Form, at pp. 16-21 of 21; Commercial General Liability Plus Endorsement,

form no. 55352 (10-08), at p. 1 of 4.

52.

By endorsement, the Policy provides as follows:

**ASSOCIATION DIRECTORS AND OFFICERS ERRORS AND OMISSIONS**

    **1.**   **Insuring Agreement**

    We will pay those sums the insured becomes legally obligated to pay as "damages" because of any negligent act, error, omission or breach of duty directly related to the management of the premises, shown in the Declarations, which occurs during the policy period. We will settle or defend, as we consider appropriate, any claim or "suit" for damages covered by this policy.   .   .   .   .

.   .   .

    **2.**   **Exclusions**

    This coverage does not apply to:

- 20 -

.   .   .

**b.**    Any transactions of any insured from which any insured gained any personal profit or advantage not shared equitably by the members of the association.

**c.**    Any failure to:

**(1)**    Procure or maintain any insurance policy or bond…

.   .   .

**e.**    Any criminal or malicious act.

**f.**    Liability based upon any intentionally dishonest or fraudulent act, or any judgment based upon any intentionally dishonest or fraudulent act.

.   .   .

**B.**    As it applies to this endorsement only, **SECTION II – WHO IS AN INSURED**, is deleted and replaced by the following:

**SECTION II – WHO IS AN INSURED**

Each of the following is an insured with respect to this coverage, but only to the extent set forth below:

**1.**    Your directors and officers, but only while acting within the scope of their duties for you;

**2.**    You with respect to your liability for the negligent act, error, omission or breach of duty committed by an officer or director.

- 21 -

.   .   .   .

**D.**   Under **SECTION V – DEFINITIONS**, the following definition
is added:

"Damages" means only actual compensatory damages for loss
suffered but does not include fines, taxes or any other cost or
expense assessed against any insured.

All other policy terms and conditions apply.

Association Directors and Officers Errors and Omissions Coverage Form, form

55010 (2-08) ("E&O Form"), at pp. 1-3 of 3.

53.

Further, the Policy provides, by way of endorsement, as follows:

Under **SECTION II – WHO IS AN INSURED**, the following is added as an
insured:

**1.**   The board of directors and officers of the association;

**2.**   All agents and employees of the association;

**3.**   All unit owners and other persons entitled to occupy any
unit of other portion of the condominium

only with respect to liability arising out of or in connection with the use,
ownership, maintenance of the common elements or other portions of the
condominium which the association has the responsibility to maintain.

All other policy terms and conditions apply.

Georgia Changes – Additional Insured – Condominium Association Endorsement, Form 55424 (4-09), p. 1 of 1.

54.

Finally, the Policy contains the following conditions precedent to coverage:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

.   .   .

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

.   .   .

    **b.**    If any claim is made or "suit" is brought against any insured, you must:

        **(1)**    Immediately record the specifics of any claim or "suit" and the date received; and

        **(2)**    Notify us as soon as practicable.

        You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

    **c.**    You and any other involved insured must:

        **(1)**    Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit";

        **(2)**    Authorize us to obtain records and other information;

- 23 -

    **(3)**    Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

    **(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

.  .  .

**3.**    **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    **a.**    To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.**    To sue us on this Coverage Part unless all of its terms have been fully complied with.

.  .  .  .

CGL Form, at p. 14 of 21.

## COUNT ONE

### 55.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 54 of this Complaint as if set forth fully herein.

56.

The Policy requires the Association Defendants, as purported insureds, perform certain conditions in the event of a claim or suit. These conditions include timely notice.

57.

The Association Defendants did not timely notify Auto-Owners of the Underlying Lawsuit.

58.

Auto-Owners' first notice of the lawsuit filed by the Owner Defendants was on April 7, 2014.

59.

By failing to notify Auto-Owners as soon as practicable of the Underlying Lawsuit, the Association Defendants breached the conditions set forth in the Policy.

60.

By failing to immediately forward copies of any correspondence, demands, notices, summonses or papers in connection with any claims or "suit" received in connection with the claims forming the basis of the Underlying Lawsuit, the Association Defendants breached the conditions set forth in the Policy.

61.

No exceptions exist regarding the application of the Policy's notice conditions precedent to coverage.

62.

Auto-Owners has no duty to defend or indemnify the Association Defendants in the Underlying Lawsuit because the Association Defendants breached the conditions precedent set forth in the Policy.

63.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy due to breach of these conditions, and, therefore, Auto-Owners has no duty to defend or indemnify the Association Defendants against the Underlying Lawsuit.

**COUNT TWO**

64.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 63 of this Complaint as if set forth fully herein.

65.

Under the terms of the Policy issued by Auto-Owners, coverage is afforded, if at all, only for damages because of occurrences, offenses, and negligent acts, errors, omissions or breaches of duty which occur or are committed during the policy period.

66.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or indemnify any of the Association Defendants for any damages because of an occurrence, offense, or negligent act, error, omission or breach of duty which occurs or is committed outside the policy period.

67.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy for any claims asserted in the Underlying Lawsuit that seek damages because of an occurrence, offense, or negligent act, error, omission or breach of duty which occurred or was committed outside the policy period.

- 27 -

## COUNT THREE

68.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 67 of this Complaint as if set forth fully herein.

69.

Under the terms of the Policy issued by Auto-Owners, coverage is afforded, if at all, only for those sums the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury", or "advertising injury", as such terms are defined by the Policy.

70.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or indemnify any of the Association Defendants for any damages not occurring because of defined "bodily injury", "property damage", "personal injury", or "advertising injury".

71.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or indemnify any of the Association Defendants to the extent that any of the

claims asserted do not seek damages because of defined "bodily injury", "property damage", "personal injury", or "advertising injury".

72.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy because the damages sought in the Underlying Lawsuit did not occur because of defined "bodily injury", "property damage", "personal injury", or "advertising injury", and, therefore, Auto-Owners has no duty to defend or indemnify the Association Defendants in the Underlying Lawsuit.

**COUNT FOUR**

73.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 72 of this Complaint as if set forth fully herein.

74.

Under the terms of the Policy issued by Auto-Owners, there is no coverage for damages because of "bodily injury" or "property damage" which are not the result of an "occurrence" or accident, or which are expected or intended from the standpoint of the insured.

75.

Under the terms of the Policy issued by Auto-Owners, there is no coverage for damages because of "personal injury" or "advertising injury" that are caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury".

76.

Under the terms of the Policy issued by Auto-Owners, there is no coverage for damages because of "advertising injury" which are expected or intended by any insured.

77.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or indemnify the Association Defendants to the extent that any of the claims asserted seek damages because of "bodily injury" or "property damage" not caused by an "occurrence" under the Policy, which were expected or intended by them, or which were known to be substantially certain to occur due to any insured's knowledge.

78.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or indemnify the Association Defendants to the extent that any of the claims asserted seek damages because of "personal injury" or "advertising injury" which were caused by any insured or at the direction of any insured with knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury".

79.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or indemnify the Association Defendants to the extent that any of the claims asserted seek damages because of "advertising injury" which were expected or intended by any insured.

80.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy for any damages which were not caused by an "occurrence" or accident, which were intended or expected from the standpoint of any insured, which were substantially certain to occur, or which were caused by any insured or at the direction of any insured with knowledge that the act would violate

the rights of another and would inflict injury, and, therefore, Auto-Owners has no

duty to defend or indemnify the Association Defendants in the Underlying Lawsuit.

## COUNT FIVE

### 81.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 80 of

this Complaint as if set forth fully herein.

### 82.

Under the terms of the Policy issued by Auto-Owners, coverage is afforded, if

at all, only for those sums the insured becomes legally obligated to pay as

"damages" because of any negligent act, error, omission or breach of duty directly

related to the management of the premises shown in the Policy's declarations.

### 83.

 Auto-Owners has no obligation to provide a defense to the Underlying

Lawsuit or indemnify any of the Association Defendants against any claims that do

not seek "damages", as such term is defined by the Policy and applicable law.

### 84.

Auto-Owners has no obligation to provide a defense to the Underlying

Lawsuit or indemnify any of the named Defendants to the extent that any of the

claims asserted do not seek "damages", as such term is defined by the Policy and applicable law.

85.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy because the claims asserted in the Underlying Lawsuit do not seek "damages", as such term is defined by the Policy and applicable law, and, therefore, Auto-Owners has no duty to defend or indemnify the Association Defendants in the Underlying Lawsuit.

**COUNT SIX**

86.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 85 of this Complaint as if set forth fully herein.

87.

Under the terms of the Policy issued by Auto-Owners, coverage is afforded, if at all, only for those sums the insured becomes legally obligated to pay as "damages" because of any negligent act, error, omission or breach of duty directly related to the management of the premises shown in the Policy's declarations.

88.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or indemnify any of the named Defendants against any claims that do not seek "damages" because of any negligent act, error, omission or breach of duty directly related to the management of the premises shown in the Policy's declarations.

89.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or indemnify any of the named Defendants to the extent that any of the claims asserted do not seek "damages" because of any negligent act, error, omission or breach of duty directly related to the management of the premises shown in the Policy's declarations.

90.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy because the claims asserted in the Underlying Lawsuit do not seek "damages" because of any negligent act, error, omission or breach of duty directly related to the management of the premises shown in the Policy's

declarations, and, therefore, Auto-Owners has no duty to defend or indemnify the Association Defendants in the Underlying Lawsuit.

## COUNT SEVEN

### 91.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 90 of this Complaint as if set forth fully herein.

### 92.

The Policy issued by Auto-Owners does not apply to any transactions of any insured from which any insured gained any personal profit or advantage not shared equitably by the members of the association.

### 93.

As agents of the Defendant Association, Maxim Management Group, LLC and Trent White meet the definition of "any insured" under the pertinent provisions of the Policy.

### 94.

The claims asserted against the Association Defendants in the Underlying Lawsuit arise from transactions by Maxim Management Group, LLC and Trent White from which Maxim Management Group, LLC and Trent White gained

personal profit or advantage not shared equitably by the members of the Association Defendant.

95.

Auto-Owners has no duty to defend or indemnify the Association Defendants against the claims asserted in the Underlying Lawsuit because those claims arise from transactions by any insured from which any insured gained personal profit or advantage not shared equitably by the members of the Association Defendant.

96.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy because the claims asserted against the Association Defendants arise from transactions by any insured from which any insured gained personal profit or advantage not shared equitably by the members of the Defendant Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association Defendants in the Underlying Lawsuit.

**COUNT EIGHT**

97.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 96 of this Complaint as if set forth fully herein.

- 36 -

98.

The Policy issued by Auto-Owners does not apply to any failure to procure or maintain any insurance policy or bond.

99.

The Underlying Lawsuit includes claims against the Association Defendants relating to their alleged failure to procure or maintain an insurance policy or bond.

100.

Auto-Owners has no duty to defend or indemnify the Association Defendants against any claims asserted against the Association Defendants in the Underlying that arise from a failure to procure or maintain an insurance policy or bond.

101.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy for any claims asserted against the Association Defendants that arise from a failure to procure or maintain an insurance policy or bond, and, therefore, Auto-Owners has no duty to defend or indemnify the Association Defendants against any such claims in the Underlying Lawsuit.

## COUNT NINE

102.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 101 of this Complaint as if set forth fully herein.

103.

The Policy issued by Auto-Owners does not apply to any criminal or malicious act.

104.

All of the claims asserted against the Association Defendants in the Underlying Lawsuit arise from Maxim Management Group, LLC's and Trent White's criminal or malicious acts.

105.

Auto-Owners has no duty to defend or indemnify the Association Defendants against the claims asserted in the Underlying Lawsuit because the claims asserted against the Association Defendants arise from criminal or malicious acts.

106.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy because all of the claims asserted against the Association

Defendants arise from criminal or malicious acts, and, therefore, Auto-Owners has

no duty to defend or indemnify the Association Defendants in the Underlying

Lawsuit.

## COUNT TEN

### 107.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 106 of

this Complaint as if set forth fully herein.

### 108.

The Policy issued by Auto-Owners does not apply to liability based upon any

intentionally dishonest or fraudulent act, or any judgment based upon any

intentionally dishonest or fraudulent act.

### 109.

All of the claims asserted against the Association Defendants in the

Underlying Lawsuit arise from Maxim Management Group, LLC's and Trent

White's intentionally dishonest or fraudulent acts.

### 110.

Auto-Owners has no duty to defend or indemnify the Association Defendants

against the claims asserted in the Underlying Lawsuit because all of the claims

asserted against the Association Defendants arise from intentionally dishonest or fraudulent acts, or seek a judgment based upon intentionally dishonest or fraudulent acts.

111.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy because all of the claims asserted against the Association Defendants arise from intentionally dishonest or fraudulent acts, or seek a judgment based upon intentionally dishonest or fraudulent acts, and, therefore, Auto-Owners has no duty to defend or indemnify the Association Defendants in the Underlying Lawsuit.

**COUNT ELEVEN**

112.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 111 of this Complaint as if set forth fully herein.

113.

The complaint filed against the Association Defendants in the Underlying Lawsuit seeks an award of attorney's fees and costs in addition to compensatory damages.

- 40 -

114.

The Policy affords no coverage for attorney's fees and costs, as such damages are not in compensation for a covered injury.

115.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage for any attorney's fees and costs sought in the Underlying Lawsuit.

**COUNT TWELVE**

116.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 115 of this Complaint as if set forth fully herein.

117.

The complaint filed against the Association Defendants in the Underlying Lawsuit seeks an award of punitive damages in addition to compensatory damages.

118.

The Policy affords no coverage for punitive damages to the extent there is no coverage under the Policy for any of the claims alleged against the named Defendants in the Underlying Lawsuit.

- 41 -

119.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage for any punitive damages sought in the Underlying Lawsuit.

**WHEREFORE**, Auto-Owners prays that this Court enter judgment that it has no duty to defend or indemnify the Association Defendants for the claims asserted in the Underlying Lawsuit; that this Court bind each and every named party herein by said judgment; that Auto-Owners be awarded costs in this action; and for further relief as this Court may deem just and appropriate.

This 30th day of October, 2014.

Respectfully submitted,

KENDALL LAW GROUP, LLC

 s/ Michael C. Kendall
Michael C. Kendall
Georgia Bar No. 414030
Kimberly DeWitt Mowbray
Georgia Bar No. 567798
*Counsel for Auto-Owners Insurance Company*

3152 Golf Ridge Blvd., Ste. 201
Douglasville, Georgia 30135
Telephone:   (770) 577-3559
Facsimile:   (770) 577-8113
mckendall@bellsouth.net
kdmowbray@bellsouth.net